# HARDING 🏛 MAZZOTTI
### LLP

*Name Changed from Martin, Harding & Mazzotti, LLP

SEND ALL CORRESPONDENCE TO:
1 Wall Street
Albany, NY 12205
PHONE: 518.862.1200
SERVICE BY FAX OR EMAIL NOT ACCEPTED

December 23, 2025

**_VIA ECF ONLY:_**
Lawrence E. Kahn, U.S. District Judge
U.S. District Court - Northern District of NY
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

  **Re:**   **Bard-Hobbs, Emeline v. Stacks Espresso LLC, et al.**
     **Case No.: 1:25-cv-713-LEK-TWD**

Dear Judge Kahn:

   This office represents Plaintiff Emeline Bard-Hobbs and the opt-in Plaintiffs, Jared Ginley, Gabriel Membreno, Armando Blanco, and Sandy Wiles, in the above-referenced matter. The parties have reached a settlement, and their executed settlement agreement is annexed hereto as **Exhibit 1**. I submit this letter to respectfully request that the Court re-open the case to approve the settlement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and so order the parties' stipulation of dismissal. *See* **Exhibit 2**. Further, pursuant to the Court's Order dated November 24, 2025, the parties ask the Court to retain ancillary jurisdiction for the purpose of enforcing the settlement agreement.

   Plaintiff alleged the following: Plaintiff and the opt-in Plaintiffs were employed by Defendants as baristas for different periods of employment. Defendants operated three coffee shops in Albany, NY and one in Troy, NY: 275 Lark St ("Lark St location"); 488 Broadway ("Broadway location"); 652 Albany Shaker Rd ("Pioneer Plaza location"); and 13 3rd St, Troy, NY ("Troy location"). Defendants required Plaintiff and opt-in Plaintiffs to share tips with tip-ineligible employees, namely, cooks or line chefs who did not provide customer service; and managers, Kylie Macana and Chloe Caruso-Sosa, in violation of both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Specifically, beginning around January 2023, Defendants implemented a policy of requiring baristas to split credit card tips evenly with cooks or line chefs. These cooks generally did not provide customer service but rather prepared food, making them tip-ineligible under NYLL Section 196-d. *See Shahriar v. Smith & Wollensky*, 2011 U.S. App. LEXIS 19625 (2d Cir. 2011) ("By its plain terms, s. 196-d bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service – *i.e.*, employees who are not "busboy[s] or similar employee[s]" and employees who are managers or "agent[s]" of the employer."). At this point, under the FLSA, it appears that Defendants are liable

only for tips retained by managers because they paid the Plaintiff and opt-in Plaintiffs more than the minimum wage.  *See* 29 C.F.R. § 531.54(d).

Defendants vehemently dispute the material allegations in the Complaint, including the tip eligibility.

The parties reached a settlement at the October 24, 2025 mediation. *See* **Exhibit 1**.  Under *Cheeks*, a court must determine whether an FLSA settlement is fair and reasonable. Relevant factors include: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faces by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted). Applying these factors, the parties' settlement is fair and reasonable and should be approved.

As set forth in the settlement agreement, the parties have agreed to settle this action for a total payment of $17,500, and Defendants have additionally agreed to pay the mediator's fee of $2,602.50.  The Plaintiff and opt-in Plaintiffs agreed to split the settlement by providing at least $1,000 to each person, an extra $3,000 to the named Plaintiff Emeline Bard-Hobbs, and then to split the remaining amount of the settlement to each person based on weeks worked after January 1, 2023 up to October 24, 2025, the date of mediation.

This is a fair settlement amount in light of Plaintiff's damages and the serious risks of the case.  Based on Defendants' records, the maximum estimated damages for Plaintiff and the Opt-In Plaintiffs are: (i) the total tips paid to the managers at issue during shifts worked by Plaintiff and Opt-In Plaintiffs, $328.21; (ii) total tips paid to cooks during shifts worked by Plaintiff and Opt-In Plaintiffs, $31,299.65; (iii) double liquidated damages for unlawfully retained tips; and (iv) statutory penalties for wage notice violations of up to $5,000 each for Plaintiff and each Opt-in Plaintiff.  Plaintiff also alleged that she was required to share 20% of her and all other baristas' credit card tips with a cook around 2021 until around the end of 2022, but Defendants have denied this and stated there are no records of it.

However, Plaintiff and the opt-in Plaintiffs' claims face substantial risks, including that Defendants contend that line chefs[1] did in fact provide customer service and are therefore eligible to receive tips.  Specifically, Defendants argue that line chefs, like baristas, are customer facing employees responsible for taking orders, preparing and serving both coffee and food items, and operating the cash register.  Further, Defendants argue that Plaintiffs are not entitled to penalties for wage notice and statement violations under the NYLL because (i) all Stacks employees were provided an electronic paystub that complies with NYLL 195, and (ii) Plaintiffs cannot sufficiently

---

[1] Referred to by Plaintiff as "cooks."

make out an injury-in-fact for standing purposes for the alleged failure to provide wage notices and statements. *Guthrie v. Rainbow Fencing,* 2024 U.S. App. LEXIS 22103 (2d Cir. 2024). .

The settlement, agreed to by all parties, will allow the parties to avoid the further burdens and expenses in establishing their claims and defenses. In addition, the settlement was reached through hard-fought negotiations between experienced counsel at a mediation, and were both arm's length and free of fraud or collusion. The mediation was conducted by Elena DeFio Kean, an experienced attorney listed as a mediator by the NDNY.

The settlement also provides for reasonable attorneys' fees and costs to Plaintiff's counsel. Under the settlement agreement, Plaintiffs' counsel will receive $6,125 as attorneys' fees – or approximately 35% of the gross settlement amount– plus $655 as reimbursement of costs.[2] In determining whether a fee is reasonable, a court considers "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original). Plaintiffs' counsel's time and labor warrants the requested fee. Plaintiff's counsel investigated and researched the claims in the case and spoke to the clients at length, drafted the complaint, drafted and served discovery, attended a mediation, and negotiated a settlement. In total, Plaintiffs' counsel, Finn Dusenbery, spent approximately 23.3 billable hours on this action, as set forth in detail in the time records attached hereto as **Exhibit 4**, resulting in a lodestar of approximately $9,320. The undersigned—the lead attorney in this case— seeks a rate of $400 per hour. *See, e.g., Surdu v. Madison Glob., LLC*, 2018 U.S. Dist. LEXIS 48356, at *25 (S.D.N.Y. Mar. 23, 2018) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced attorneys or partners in FLSA and NYLL wage -and- hour cases.")(collecting cases). As set forth *supra*, Plaintiff faced a risk of loss based on disputed legal and factual issues. Moreover, Plaintiff's counsel took this case pursuant to a retainer agreement with the Plaintiff that stated that counsel would receive a percentage of the recovery only if Plaintiff obtained a recovery. Accordingly, Plaintiff's counsel faced a risk of receiving little or no payment for their work depending on the outcome of the underlying claims. Thus, the magnitude, complexities, and risks of the litigation weigh in favor of approving the requested fee.

Further, the quality of representation weighs in favor of approving the requested fee. Mr. Dusenbery has about twelve years of employment law experience. He started his own practice around August 2013, litigating both individual and class/collective wage and hour cases and handling all aspects of such litigation. From around 2018 to 2025, he worked for five law firms practicing employment law, including three firms that focused almost exclusively on class/collective wage and hour litigation. He graduated from Columbia University in 2008, where he won the Bunner Prize for the best senior thesis on American literature. Subsequently, he was

---

[2] Plaintiff's costs included: filing fee ($405); service on Defendant Stacks Espresso LLC ($125); service on Defendant Dunckel ($62.50); and service on Defendant Wrightson ($62.50). *See* **Exhibit 3**. Plaintiff can provide further documentation if necessary.

awarded the highest scholarship at Brooklyn Law School and graduated in 2012. During law school, he was an intern for a U.S. Magistrate Judge in the Eastern District of New York.

The requested fee is reasonable in relation to the settlement. The settlement agreement provides for a fee and costs of $6,780 (approximately 35% of the gross settlement amount plus costs of $655). Further, under the contingency fee engagement agreement, Plaintiff's counsel is entitled to request out of the total recovery 35% in attorneys' fees of the gross settlement amount and recovery of costs. *See Mireku v. Red Vision Sys., Inc.*, No. 11 Civ. 9671, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (noting the consensual nature of the fee arrangement); *Snead*, 286 F. Supp. 3d at 561 (approving FLSA settlement in which the $7,500.00 fee award represented 37.5% of the $20,000.00 settlement amount). In any event, there is no strict limit on the proportion of a settlement that may be allocated to attorneys' fees in FLSA cases, *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 604-605 (2d Cir. 2020). Finally, the FLSA is a remedial statute designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a). A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. For the reasons set forth above, I respectfully request that the Court approve the attorneys' fees and costs set forth in the settlement agreement.

Thank you for your consideration in this matter.

Respectfully submitted,

Finn Dusenbery, Esq.
Employment & Labor Attorney

CC:    All counsel of record via ECF